**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

Rick Wayne Valentini,

    Petitioner,

v.

David Shinn, et al.,

    Respondents.

No. CV-19-00183-PHX-MTL

**ORDER**

Pending before the Court is Magistrate Judge Deborah M. Fine's Report and Recommendation ("R & R") (Doc. 14), recommending that the Petition for Writ of Habeas Corpus (the "Petition") (Doc. 1) be denied and dismissed with prejudice. The Court has reviewed the Petition (Doc. 1), Respondents' Response to the Petition (Doc. 11), Petitioner's Reply to the Response (Doc. 12), the R & R (Doc. 14), the arguments raised in Petitioner's Objection to the R & R (Doc. 15), and Respondents' Reply to Petitioner's Objection (Doc. 16). For the reasons expressed below, the Court overrules Petitioner's objections and adopts the Magistrate Judge's R & R in its entirety.

## I.  BACKGROUND AND PROCEDURAL HISTORY

On March 24, 2011, a Maricopa County grand jury indicted Petitioner on two counts. (Doc. 11-1 at 50.) Count One was for the second-degree murder of his girlfriend Jamie Laiadee. (*Id.* at 50–51.) Count Two was for fraudulent schemes and artifices for using Ms. Laiadee's credit cards and personal assets. (*Id.* at 51.)

Petitioner had a fifteen-day jury trial at which his defense was that there was no

physical evidence tying him to the homicide. (Doc. 11-8 at 271–81.) The jury found Petitioner guilty on both counts. (*Id.* at 310.) At sentencing, Petitioner maintained his innocence and insisted Ms. Laiadee was not dead. (*Id.* at 331, 333, 335.) The trial court sentenced Petitioner to an aggravated sentence of twenty-two years on the second-degree murder charge, and to an aggravated sentence of twenty years on the fraudulent schemes and artifices charge. (*Id.* at 337–38.) These sentences run concurrently to each other and to a sentence previously imposed in a separate criminal case. (*Id.*)

On direct appeal, Petitioner's appointed counsel raised one issue: whether Petitioner was "deprived of the right to a unanimous verdict by a duplicitous indictment, erroneous jury instructions and a faulty verdict form." (Doc. 1 at 127–28.) The Arizona Court of Appeals held that "second-degree murder defines a single offense that may be committed with any of three culpable mental states, and a jury need not agree unanimously on which of the three mental states the defendant possessed when causing the victim's death." (*Id.* at 135.) As a result, the Arizona Court of Appeals affirmed Petitioner's convictions and sentences. (*Id.*) The Arizona Supreme Court denied review. (*Id.* at 169.) Petitioner did not pursue a petition for writ of certiorari to the United States Supreme Court. (*Id.* at 3.)

On May 24, 2013, Petitioner filed a Notice of Post-Conviction Relief ("PCR"). (Doc. 11-9 at 4–6.) In July 2014, appointed counsel filed a notice of completed review stating she was unable to identify an "issue to pursue in a PCR." (Doc. 1 at 171.) The Maricopa County Superior Court gave Petitioner until August 18, 2014, to file his PCR petition pro per. (Doc. 11-9 at 8–9.) Petitioner executed a "state court complaint" on December 2, 2014. (*Id.* at 11–13.) This complaint was filed in the superior court on January 6, 2015. (*Id.*) Petitioner requested "the verdict be vacated and [he] be given a new trial" because (1) no body or evidence was found showing that a crime was committed, (2) the prosecution used false witnesses and statements to obtain an indictment, and (3) the jury was not unanimous and could not agree that Petitioner's actions were "deliberate, reckless, negligent." (*Id.* at 12–13.) Petitioner also attached a

note to the complaint form advising that the filing was the "pro per part of my Rule 32 appeals proceedings." (*Id.* at 16.)

The superior court construed Petitioner's complaint as "Defendant's Pro Per Petition for Post-Conviction Relief" and ordered the State to respond. (*Id.* at 17.) The State's response argued that the petition was procedurally deficient for failure to include "a declaration by the defendant stating under penalty of perjury that the information contained is true to the best of the defendant's knowledge and belief" as required by Arizona Rule of Criminal Procedure 32.5 (*Id.* at 22.) In Petitioner's reply, he moved to "dismiss the incorrect petition and allow [Petitioner] sixty days [60] to re-file his Rule (pro per) petition with the correct paperwork pursuant to Rule 32.5." (*Id.* at 26.) In an order filed June 24, 2015, the superior court found that Petitioner violated Rule 32.5, dismissed Petitioner's January 2015 petition without prejudice, and required Petitioner to file a corrected petition within thirty days. (*Id.* at 30–31.)

On July 16, 2015, Petitioner's corrected PCR petition was filed and included the required declaration. (*Id.* at 36–39.) Petitioner asserted additional issues not raised in his January 2015 petition. (*Id.*) Petitioner raised the same six grounds for relief he now asserts in this § 2254 Petition, (*id.* at 42–60), and raised a claim that his PCR counsel was inadequate. (*Id.* at 39.)

On December 4, 2015, the superior court filed an order inaccurately stating it had dismissed Petitioner's Rule 32 proceeding on June 24, 2015, "when [Petitioner] missed the deadline for filing a supporting declaration." (*Id.* at 63.) As noted above, the court provided Petitioner the opportunity to file a corrected petition, which Petitioner did timely file. (*Id.* at 30–31.) The superior court construed Petitioner's July 16, 2015, petition as a notice of PCR and held that the PCR notice was a successive second PCR proceeding. (*Id.* at 62–63.)

The superior court held that all claims Petitioner raised, except his ineffective assistance of counsel claim, were precluded under Arizona Rule of Criminal Procedure

32.2(a)(3)[1] because Petitioner had not raised the claims on direct appeal. (*Id.*) The court also held that Petitioner's ineffective assistance of trial counsel claim was precluded in his "second" Rule 32 action under Rule 32.2(a)(2).[2] (*Id.*) The superior court also rejected Petitioner's claim for newly discovered evidence, concluding that Petitioner could have asserted this evidence on appeal, the evidence was not "new," and that Petitioner failed to explain why the evidence "would have changed the verdicts and sentences." (*Id.* at 64.) The superior court found Petitioner's appeal-related claims unpersuasive based on the court's previous ruling and refused to revisit those same claims. (*Id.*) The superior court also rejected Petitioner's ineffective assistance of PCR counsel claim. (*Id.*)

The superior court denied Petitioner's subsequent motion for reconsideration. (*Id.* at 67.) On petition for review of the superior court's ruling, the Arizona Court of Appeals granted review and denied relief. (*Id.* at 75.) On December 3, 2018, the Arizona Supreme Court denied his petition for review. (*Id.* at 77.) Petitioner then timely filed the instant habeas petition in this Court. (Doc. 1.)

## II.    LEGAL STANDARD

When reviewing a state prisoner's habeas corpus petition under 28 U.S.C. § 2254, a federal district court "must decide whether the petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Coleman v. Thompson*, 501 U.S. 722, 730 (1991) (quoting 28 U.S.C. § 2254). The Court only reviews de novo those portions of the report specifically objected to and "may accept, reject, or modify, in whole or in part, the findings and recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); *see also* Fed. R. Civ. P. 72(b)(3) ("The district judge must determine de novo any part of the magistrate judge's disposition that has been *properly* objected to.") (emphasis added). The Court need not "review . . . any issue that is not the subject of an objection." *Thomas v. Arn*, 474 U.S. 140, 149 (1985). A proper objection made to a magistrate judge's R & R "requires '*specific written objections* to the proposed

---

[1] As the R & R mentions (*see* Doc. 14 at 4 n.3), the superior court's order mistakenly cited "Ariz. R. Crim. P. 32.1(a)(3)." (Doc. 11-9 at 63.)
[2] Again, as the R & R mentions (*see* Doc. 14 at 5 n.4), the superior court mistakenly cited Rule 32.1(a)(2) instead of Rule 32.2(a)(2).

findings and recommendations.'" *Warling v. Ryan*, No. CV-12-01396-PHX-DGC (SPL), 2013 WL 5276367, at *2 (D. Ariz. Sept. 19, 2013) (quoting Fed. R. Civ. P. 72(b)). If a petitioner raises a general objection, "the Court is relieved of any obligation to review it." *Martin v. Ryan*, No. CV-13-00381-PHX-ROS, 2014 WL 5432133, at *2 (D. Ariz. Oct. 24, 2014) (citations omitted). Therefore, a general objection "has the same effect as would a failure to object." *Warling*, 2013 WL 5276367 at *2 (citations omitted).

### III.    DISCUSSION

The Petition raises six grounds for relief. (Doc. 1 at 6–11.) Petitioner's Ground One alleges a denial of his *Miranda* rights regarding the testimony of a witness, J.R., who had been housed with Petitioner in jail. (*Id.* at 6.) In Ground Two, Petitioner contends he was denied Fifth Amendment Due Process when the State used witness J.R.'s statement during grand jury proceedings. (*Id.* at 7.) In Ground Three, Petitioner alleges the jury violated his Sixth Amendment right to trial by an impartial jury when the "biased and irrational" jury found him guilty of second-degree murder. (*Id.* at 8.) Petitioner's Ground Four claim is that his Fifth Amendment due process rights were violated when he received ineffective assistance of trial counsel. (*Id.* at 9.) In Ground Five, Petitioner alleges there is new evidence in his case supporting a claim of actual innocence. (*Id.* at 10.) Petitioner contends in Ground Six that there was "obstruction of [his] constitutionally protected right to represent himself and participate in the appeals process." (*Id.* at 11.)

The R & R recommends that all grounds be denied because "Grounds One through Three of the Petition are procedurally defaulted without excuse" and "Grounds Four through Six fails on the merits." (Doc. 14 at 40.) Petitioner filed an objection and addressed each of the six grounds. (Doc. 15.) For the reasons outlined below, the Court will accept and adopt the R & R in its entirety.

#### A.    Grounds One, Two, and Three

The R & R correctly summarizes Petitioner's Grounds One, Two, and Three claims:

1
2
3
4
5
6

       In Ground One, Petitioner argues that prosecution witness J.R. was recruited in jail by police detectives and a fellow inmate to supply false testimony that Petitioner had reported he had "blasted Jamie [Laiadee] with a shotgun, cut her up, and fed her to the pigs." (Doc. 1 at 442.) Petitioner contends that "[a]nything [J.R.] says is a violation of [P]etitioner's *Miranda* rights under the U.S. Constitution, since [J.R.] did not read [P]etitioner his rights before speaking to him." (*Id.* at 443.)

7
8
9
10
11
12
13

       In his Ground Two claim, Petitioner asserts that the only evidence provided to the grand jury was the "false statement" provided by J.R. to a police detective. (Doc. 1-1 at 1.) Petitioner states that it must be concluded that J.R.'s testimony was false because J.R. changed his "story" from his initial statement to the police detective, to his grand jury testimony, then to a pre-trial interview with defense counsel, and finally to his trial testimony. (*Id.*) Petitioner further argues that the prosecution used J.R.'s testimony knowing it was false. (*Id.* at 2.)

14
15
16
17
18
19
20
21

       Petitioner's Ground Three claim is that he was convicted by a biased jury. (Doc. 1 at 8, Doc. 1-1 at 4–6.) Petitioner supports this conclusion with: (1) evidence that jurors reported to media outlets they had allegedly found Petitioner guilty because he was "arrogant and indifferent"; (2) the prosecution changed its theory of how the victim was killed; and (3) the jury "was exposed" to false testimony given by a police officer, the victim's father, and witness J.R. (Doc. 1-1 at 4–6.) More generally, Petitioner contends that no unbiased jury could have found him guilty in a case lacking a body, other physical evidence, a coroner or medical examiner's report, a murder witness, or a weapon. (*Id.* at 4.)

(Doc. 14 at 10–11.)

22
23
24
25
26
27
28

       Petitioner did not raise Grounds One, Two, or Three in his direct appeal, rather he brought these arguments in his PCR action filed on July 16, 2015. (Doc. 11-9 at 37–38, 42–44, 46, 48–50.) The R & R states that "Petitioner failed to exhaust his claims asserted here in Grounds One, Two, and Three and he is time-barred under Arizona law from returning to state court with these claims." (Doc. 14 at 11.) Petitioner concedes that he did not bring up these three grounds on direct appeal but outlines several justifications in his objections. (Doc. 15 at 1–3.) First, Petitioner says he "was never made aware of his

right to bring them up on direct appeal by his legal counsel." (*Id.* at 1.) Petitioner also mentions that he was told "only items from the trial transcript" were challengeable during direct appeal and he had to wait until later to challenge other issues. (*Id.* at 2.) Finally, Petitioner asserted that he is not a lawyer, has no legal training or experience, and has no access to a law library. (*Id.* at 3.)

A state prisoner must properly exhaust all state court remedies before this Court may grant an application for a writ of habeas corpus. 28 U.S.C. § 2254(b)(1), (c); *see Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Coleman v. Thompson*, 501 U.S. 722, 731 (1991). Arizona prisoners properly exhaust state remedies by presenting claims to the Arizona Court of Appeals in a procedurally appropriate manner. *O'Sullivan v. Boerckel*, 526 U.S. 838, 843–45 (1999); *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999). "To exhaust one's state court remedies in Arizona, a petitioner must first raise the claim in a direct appeal or collaterally attack his conviction in a petition for post-conviction relief pursuant to Rule 32." *Roettgen v. Copeland*, 33 F.3d 36, 38 (9th Cir. 1994); *see also* Ariz. R. Crim. P. 32.1(d)–(h), 32.2(a), 32.4(a). A procedural bar exists if a claim was not fairly presented in state court and no state remedies remain available to the petitioner. *Teague v. Lane*, 489 U.S. 288, 298–99 (1989); *Beaty v. Stewart*, 303 F.3d 975, 987 (9th Cir. 2002).

Petitioner failed to raise Grounds One, Two, or Three in a procedurally appropriate manner. The Maricopa County Superior Court also found the claims to be precluded because Petitioner failed to raise these issues on direct appeal. (Doc. 11-9 at 63.) Petitioner's objections on this point do not excuse this failure. Thus, each ground is procedurally barred.

Even so, the Court may review Petitioner's procedurally defaulted claims if he can prove either (1) cause for the default and actual prejudice to excuse the default, or (2) a miscarriage of justice/actual innocence. 28 U.S.C. § 2254(c)(2)(B); *Schlup v. Delo*, 513 U.S. 298, 321 (1995); *Coleman*, 501 U.S. at 750. "Cause" is something that "cannot be fairly attributable" to a petitioner, and a petitioner must show that this "objective factor

external to the defense impeded [his] efforts to comply with the State's procedural rule." *Coleman*, 501 U.S. at 753 (citation and internal quotation marks omitted). To establish prejudice a "habeas petitioner must show 'not merely that the errors at . . . trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Murray v. Carrier*, 477 U.S. 478, 494 (1986) (citation omitted). "Such a showing of pervasive actual prejudice can hardly be thought to constitute anything other than a showing that the prisoner was denied 'fundamental fairness' at trial." *Id.*

The miscarriage of justice exception to procedural default "is limited to those *extraordinary* cases where the petitioner asserts his [actual] innocence and establishes that the court cannot have confidence in the contrary finding of guilt." *Johnson v. Knowles*, 541 F.3d 933, 937 (9th Cir. 2008). To meet this high standard, a petitioner must establish their factual innocence of the crime and not mere legal insufficiency. *See Bousley v. United States*, 523 U.S. 614, 623 (1998); *Jaramillo v. Stewart*, 340 F.3d 877, 882–83 (9th Cir. 2003). A petitioner "must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *McQuiggin v. Perkins*, 569 U.S. 383, 399 (2013) (citation omitted). Because of "the rarity of such evidence, in virtually every case, the allegation of actual innocence has been summarily rejected." *Shumway v. Payne*, 223 F.3d 982, 990 (9th Cir. 2000) (citing *Calderon v. Thomas*, 523 U.S. 538, 559 (1998)).

### i.      Ground One

Petitioner objected to the R & R's recommendation for Ground One and declares that "[i]t is now clear that Ground One involves 'cause,' prejudice,' and an 'extreme miscarriage of justice.'" (Doc. 12 at 10; Doc. 15 at 3–5.) In Petitioner's objections, he argues that Ground One succeeds because (1) a prosecution witness, J.R., and Detective Moffat supplied false testimony and (2) the State violated his *Miranda* rights. (Doc. 15 at 3–7; Doc. 1 at 6, 443.)

Petitioner contends that Respondents' answer to the Petition supplies "new"

evidence that J.R. never spoke with Petitioner and that J.R. used a false story when testifying at trial. (Doc. 12 at 9–10.) Petitioner also asserts that the prosecutor lied at trial and defense counsel "did nothing about it." (*Id.* at 10.) As the R & R reveals, the record reflects that Detective Moffat told the grand jury that Petitioner had reported to J.R. that Petitioner "killed Jamie, and he used the shotgun from the storage unit." (Doc. 11-1 at 43.) Detective Moffat also testified before the grand jury that Petitioner reported to J.R. that the police would never find the victim's body and that the police had "found the murder weapon and added that he killed [Ms. Laiadee] with the shotgun that was located during the search of his storage unit." (Doc. 1 at 203.) However, at trial, J.R. testified that he did not tell Detective Moffat that Petitioner killed Jamie and he used a shotgun but had heard it from other inmates. (Doc. 11-5 at 15.) J.R. did testify that Petitioner said that "the police know that he killed her" and he "can't take it no more, that he needs to get it off his chest and he needed to talk to somebody." (*Id.* at 15–16.) Petitioner also asked J.R. "out of the blue" if he can be charged "with murder without a body." (*Id.* at 18.)

After trial counsel completed J.R.'s questioning, the jury submitted a question asking J.R., "Did [Petitioner] ever discuss ever telling you the status of his girlfriend, current whereabouts?" (*Id.* at 95–97.) J.R. answered, "No." (*Id.* at 97.) When discussing this question outside the presence of the jury and before the question was posed to the jury, the prosecutor advised the court that "[J.R.] did hear with [Petitioner] did, but he heard it from anther inmate so I don't want him to say that because that's hearsay because [Petitioner] never told him that." (*Id.* at 95.) Detective Moffat reaffirmed that J.R. did tell him that Petitioner confessed to killing Ms. Laiadee. (*Id.* at 103–04, 106–07.) Detective Moffat also knew that other inmates said that Petitioner killed Ms. Laiadee. (*Id.* at 104–05.) Petitioner highlights that this information proves that J.R. lied to Detective Moffat, who in turn lied to the grand jury and again at trial. (Doc. 12 at 10.) Petitioner also says that is clear that another inmate, Ethan Ducharme, provided J.R. with a false story. (*Id.*)

Next, Petitioner asserts that any testimony J.R. provided violated Petitioner's *Miranda* rights "since [J.R.] did not read the Petitioner his rights before speaking with

him." (Doc. 1 at 6, 443.) In *Miranda v. Arizona*, 384 U.S. 436, 444, 478–79 (1966), the United States Supreme Court held that a person subjected to custodial interrogation must be provided certain warnings before a state actor elicits statements. But, "*Miranda* does not govern interrogation by private citizens acting on their own." *United States v. Eide*, 875 F.2d 1429, 1433 (9th Cir. 1989) (citations omitted). As the R & R sets out, J.R. sought out the Chandler Police Department to provide this information before the grand jury took place. (Doc. 11-1 at 42–43.) No one was in contact with J.R. before he provided the information. (*Id.* at 91–92.)

The Court agrees with the R & R that "Petitioner fails to explain how he is entitled to a finding of either cause or prejudice . . . to excuse his procedural default of Ground One." (Doc. 14 at 17.) Petitioner's argument that J.R. and Detective Moffat supplied false testimony to the court does not align with the assertions or conclusion on the record before this Court. Petitioner's *Miranda* claim also does not apply because J.R. went to the police on his own accord. Neither the alleged inconsistency with J.R.'s and Detective Moffat's story nor the *Miranda* violation claim meets the standard to excuse Petitioner's procedural default. The R & R correctly finds that "cause," "prejudice," or the "miscarriage of justice" exception were not met. Petitioner did not show "cause," which the petitioner must establish interfered with his efforts to comply with the State's procedural rules. *Coleman*, 501 U.S. at 753. Nor does the record support a finding of "prejudice" or a "miscarriage of justice" given the Petition and objections. *See Murray*, 477 U.S. at 494; *Johnson*, 541 F.3d at 937.

Accordingly, the Court accepts and adopts the R & R's recommendation that Ground One is procedurally defaulted without excuse.

### ii.    Ground Two

Petitioner asserts that the "State's use of [J.R.]'s false statement during Grand Jury Proceeding is a violation" of his Fifth Amendment rights. (Doc. 1 at 7.) He also states that his "rebuttal of the Respondents' claim that Ground Two is procedurally defaulted rests with the same arguments as in Ground One." (Doc. 12 at 10–11.) As the R & R

summarizes:

> Petitioner asserts his Ground Two claim relies on the conclusions that: (1) J.R. lied to Detective Moffat, who in turn lied to the grand jury; (2) J.R. never "received" a confession from Petitioner and relied solely of the allegedly false statements of fellow inmate Ethan Ducharme; (3) the prosecutor knew that Detective Moffat's statement about J.R. having killed Ms. Laiadee with a shotgun was hearsay and perjury but used it anyway to obtain an indictment; and (4) both defense trial lawyers knew Detective Moffat's statement was perjurious and did nothing, thus allowing Petitioner to be convicted of a crime he did not commit.

(Doc 14 at 18.) In Petitioner's Objection, he outlines eight "bullet points" to show that the "cause" and "prejudice" standard are met for Ground Two. (Doc. 15 at 8–9.) Petitioner also objects to the R & R based on hearsay concerns and that the evidence was not sufficient to convict him. (*Id.* at 7–8.)

The Court has reviewed each argument and objection and agrees with the R & R that these "are premised on faulty reasoning." (Doc. 14 at 18.) Petitioner again raises the issue relating to the inconsistency with J.R.'s and Detective Moffat's testimony. As discussed, J.R. testified that he did not tell Detective Moffat that Petitioner killed Ms. Laiadee. (Doc. 11-5 at 45.) Detective Moffat testified at trial that J.R. did tell him that Petitioner killed Ms. Laiadee. (*Id.* at 107.) Petitioner uses this discrepancy to allege that grand jury and trial jury were presented false testimony. (Doc. 15 at 7.) As the R & R outlines, "Detective Moffat's testimony was consistent before the grand jury and at trial, and J.R.'s inconsistent testimony at trial does not prove that Moffat's testimony was false." (Doc. 14 at 18.) Nothing in the record suggests that Detective Moffat's testimony was false. Even if Detective Moffat provided hearsay evidence to the grand jury, that evidence was proper. *See Costello v. United States*, 350 U.S. 359, 363 (1956) (concluding that an indictment premised on hearsay was not subject to challenge under the Fifth Amendment "on the ground that there was inadequate or incompetent evidence before the grand jury"); *United States v. Zielezinski*, 740 F.2d 727, 729 (9th Cir. 1984) (same). Moreover, the R & R cites ten other pieces of evidence presented to the grand jury which

would provide probable cause for the indicted offense. (*See* Doc. 14 at 19.)

Petitioner's list of objections to the R & R's recommendation for Ground Two also do not meet the standard to excuse procedural default. Petitioner rehashes several theories and conclusory statements to support his Ground Two claim. These objections include an ineffective assistance of counsel issue, "incompetence" by certain Arizona Department of Correction legal personnel, and more issues relating to "deceptive testimony" and "false hearsay." (Doc. 15 at 8–9.) The R & R correctly finds that "cause," "prejudice," or the "miscarriage of justice" exception were not met for Ground Two. Petitioner did not show "cause," which he must establish interfered with his efforts to comply with the State's procedural rules. *Coleman*, 501 U.S. at 753. Nor does the record support a finding of "prejudice" or a "miscarriage of justice" given the Petition and objections. *See Murray*, 477 U.S. at 494; *Johnson*, 541 F.3d at 937.

Accordingly, the Court accepts and adopts the R & R's recommendation that Ground Two is procedurally defaulted without excuse.

### iii.    Ground Three

Petitioner's Ground Three claim is that the "jury was biased and irrational" and violated his Sixth Amendment right to an "impartial jury" when it found him guilty of murder. (Doc. 1 at 8.) As the R & R notes, "Petitioner agrees with Respondents that his Ground Three claim is a challenge to the sufficiency of the evidence." (Doc. 12 at 14–15.) In the Petition, Reply to Respondents' Response, and Objection, he continues to assert that no rational jury could find someone guilty of murder with no body, no crime scene, no physical evidence, no murder weapon, and no witnesses. (Doc. 1 at 450; Doc. 12 at 15; Doc. 15 at 9.)

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). On review for sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential

elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The R & R correctly quoted the Ninth Circuit's two-step test when determining a question of sufficiency of the evidence. (Doc. 14 at 20–21.) The court in *United States v. Nevils*, explained that *Jackson* established:

> [A] two-step inquiry for considering a challenge to a conviction based on sufficiency of the evidence. First, a reviewing court must consider the evidence presented at trial in the light most favorable to the prosecution. This means that a court of appeals may not usurp the role of the finder of fact by considering how it would have resolved the conflicts, made the inferences, or considered the evidence at trial. Rather, when "faced with a record of historical facts that supports conflicting inferences" a reviewing court "must presume-even if it does not affirmatively appear in the record-that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."
>
> Second, after viewing the evidence in the light most favorable to the prosecution, the reviewing court must determine whether this evidence, so viewed, is adequate to allow "*any* rational trier of fact [to find] the essential elements of the crime beyond a reasonable doubt."

598 F.3d 1158, 1164 (9th Cir. 2010) (citations omitted).

Petitioner raises several issues related to Ground Three. (Doc. 1 at 450–52.) He states that the jury was exposed to "false testimony" from several people. (*Id.* at 450–51.) Further, Petitioner notes that the prosecutor acted in an "unethical and illegal" manner which "exposed" the jury to false statements. (*Id.* at 451.) Petitioner objected to many of these same issues that the R & R resolved against his favor. (Doc. 15 at 9–11.) He objected to J.R.'s "hearsay" statements, Ms. Laiadee father's trial testimony, and a prosecution witness's testimony about Petitioner's alleged physical abuse. (*Id.*)

Petitioner's arguments and objections to J.R.'s testimony fail for the same reasons as they did in Grounds One and Two. As the R & R explains, this argument "disregards key evidence" and omits all the other testimony that J.R. provided against Petitioner. (*See* Doc. 11-5 at 15, 18–19.) As to Petitioner's reliance that Mr. Laiadee's testimony proved that Ms. Laiadee was still alive when the murder occurred, that argument does not follow

1
2
3
4
5

the whole record. The R & R shows Mr. Laiadee's testimony on direct and cross examination, which reveals that the part Petitioner relies on was taken out of context. (*See* Doc. 14 at 22–23.) These arguments and objections do not pass the sufficiency of the evidence two-step test set forth in *Nevils* nor the standard to overcome procedural default.

6
7
8
9
10
11
12
13
14
15
16

The rest of Petitioner's objections raise issues from conclusory statements that certain evidence exposed the jury to false evidence. This includes Petitioner's arguments that the prosecutor's actions "exposed" the jury to false statements. None of these arguments and objections explain how they excuse procedural default. The R & R correctly finds that "cause," "prejudice," or the "miscarriage of justice" exception were not met for Ground Three. Petitioner did not show "cause," which the petitioner must establish interfered with his efforts to comply with the State's procedural rules. *Coleman*, 501 U.S. at 753. Also, the record does not support a finding of "prejudice" or a "miscarriage of justice" given the Petition or objections. *See Murray*, 477 U.S. at 494; *Johnson*, 541 F.3d at 937. Petitioner also has not met his burden with his sufficiency of the evidence challenge.

17
18

Accordingly, the Court accepts and adopts the R & R's recommendation that Ground Three is procedurally defaulted without excuse.

19

**B.    Ground Four**

20
21
22
23
24

Petitioner's Ground Four claim is that his Fifth Amendment Due Process right was violated from ineffective assistance of counsel ("IAC"). [3] (Doc. 1 at 9.) Petitioner argues seven instances of alleged ineffectiveness by one of his two trial attorneys. (Doc. 1-1 at 8–9.) Each sub-claim of IAC will be addressed as Petitioner objected to each claim. For the reasons stated below, the Court adopts the R & R's recommendation that Petitioner's

25
26
27
28

[3] As discussed above, the superior court erred when it held that Petitioner's pro se petition had been dismissed. (*See* Doc. 11-9 at 63.) Petitioner timely corrected a procedural defect when he was given the ability to do so. (*Id.* at 30–31.) As the R & R notes, "Respondents concede this error and do not argue his Ground Four claims were procedurally defaulted." (Doc. 14 at 24.) Thus, the Court will address the merits of Petitioner's Ground Four claims de novo. *See Atwood v. Schriro*, 489 F. Supp. 2d 982, 1000 (D. Ariz. 2007) (citing *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002)).

IAC claims fail on the merits. (Doc. 14 at 32.)

"An ineffective assistance claim has two components: A petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced the defense." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (internal citations and quotations omitted). A court deciding a Sixth Amendment ineffectiveness claim must "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland v. Washington*, 466 U.S. 668, 690 (1984). A defendant making a claim of IAC must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. *Id*. The Court must then determine, considering all the circumstances, whether the acts or omissions were outside "the wide range of professionally competent assistance." *Id*. In making that determination, "the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. Finally, "[r]elief is warranted only if no reasonable jurist could disagree that the state court erred." *Murray v. Schriro*, 882 F.3d 778, 825 (9th Cir. 2018) (citations omitted).

### i.     IAC Claim One

Petitioner asserts that Marie Farney, his trial counsel, "failed to file a timely pre-trial challenge to the Grand Jury indictment – an indictment secured with a false statement from a jailhouse informant." (Doc. 1-1 at 8.) Petitioner's objections to the R & R raise the same arguments that trial counsel did not challenge the grand jury indictment or found out about the false testimony at trial and did not challenge it then. (Doc. 15 at 12.)

As the R & R notes, the Ninth Circuit has held that "the Due Process Clause of the Fifth Amendment is violated when a defendant has to stand trial on an indictment which the government knows is based partially on perjured testimony, when the perjured testimony is material, and when jeopardy has not attached." *United States v. Basurto*, 497 F.2d 781, 785 (9th Cir. 1974). Here, Petitioner continues to raise the issue that Detective

Moffat's grand jury testimony was false and that his trial counsel's performance was deficient in not challenging it. As discussed above, Detective Moffat's testimony was consistent throughout this matter despite J.R.'s testimony. As the R & R explains, Petitioner's arguments and objections do not consider the fact that Detective Moffat was cross-examined on this issue and no evidence suggests his testimony was false. (Doc. 14 at 25.) Petitioner does not establish either that his defense counsel was ineffective for not filing a challenge to the grand jury indictment or that he suffered prejudice. *Strickland*, 466 U.S. at 687.

### ii.    IAC Claim Two

Petitioner's second claim of IAC is that trial counsel "failed to file a timely motion to dismiss the murder charge for lack of 'Corpus Delecti' – a murder charge with no body, no physical evidence, etc." (Doc. 1-1 at 8.) Petitioner's objections to the R & R on this point seem to stray off his original argument and challenge his trial counsel's failure to address "deceptive testimony" at the grand jury and trial. (Doc. 15 at 12–13.) As the R & R notes, "[p]rior to trial, defense counsel filed a motion to dismiss Petitioner's second degree murder count and for an order 'precluding the State from offering any and all statements allegedly made by [Petitioner] due to the State's inability to show Corpus Delecti.'" (Doc. 14 at 26 (quoting Doc. 11-1 at 119).) Defense counsel also argued that the evidence could not support homicide and certain hearsay should be excluded during the trial. (Doc. 11-1 at 124–25.) When the superior court stated it would rule on this upon a Rule 20 motion, (Doc. 11-5 at 7), defense counsel moved to dismiss pursuant to Rule 20. (Doc. 11-7 at 112.) Although the superior court noted that there was "substantial circumstantial evidence that Jamie Laiadee is in fact dead, and that [Petitioner] did it," (*id.* at 113), defense counsel argued that the State's evidence was not credible evidence on which a jury could find him guilty. (*Id.* at 112.)

Petitioner's objections to the R & R on this point are misplaced. Petitioner's defense counsel did file a proper motion to dismiss which the trial court considered and ruled on. There is no evidence that what defense counsel did would render her ineffective

for *Strickland* purposes. Petitioner does not establish either that his defense counsel was ineffective for not filing a motion to dismiss or that he suffered prejudice. *Strickland*, 466 U.S. at 687.

### iii.   IAC Claim Three

Petitioner's third claim of IAC alleges that trial counsel failed to call Gretchen Deo as a witness, who was "the alleged victim's real best friend" and that "testimony would have refuted" other harmful testimony presented by the prosecution. (Doc. 1-1 at 8.) Petitioner provided a general objection to this claim and stated that his counsel's failures were not professional, responsible, competent, and ethical. (Doc. 15 at 13–14.)

The R & R correctly states that Petitioner "fails to provide any evidence to support his argument that Ms. Deo would have provided testimony to counter the testimony of Karlynne Martin." (Doc. 14 at 27.) *See Dows v. Wood*, 211 F.3d 480, 486 (9th Cir. 2000) (denying petitioner's claim of IAC because of the lack of evidence that a certain witness would have "provided helpful testimony"). As the Respondents pointed out, Ms. Deo was listed as a potential witness for the prosecution (Doc. 11-1 at 62, 135), suggesting that this testimony might not have been helpful to Petitioner. Petitioner's objections have raised no more than mere speculation of possible helpful information, which is not enough to raise an IAC claim. *See Bragg v. Galaza*, 242 F.3d 1082, 1088 (9th Cir. 2001), as amended by 253 F.3d 1150 (9th Cir. 2001). Finally, as the R & R concludes, counsel is often in the best position to make these "tactical considerations" on whether to call certain witnesses. *See Gonzalez v. United States*, 553 U.S. 242, 249 (2008).

Petitioner does not establish either that his defense counsel was ineffective for not calling Ms. Deo as a witness or that he suffered prejudice. *Strickland*, 466 U.S. at 687.

### iv.   IAC Claim Four

In Petitioner's fourth claim, he asserts that trial counsel failed to use expert witness Dr. John Bruhn, "who would have testified that 20% (1 in 5) of all people who disappear do so with nothing more than the clothes on their back and the money in their pockets." (Doc. 1-1 at 8.) Petitioner again provided a general objection to this claim and

stated that his counsel's failures were not professional, responsible, competent, and ethical. (Doc. 15 at 13–14.)

The Court agrees with the R & R that "Petitioner has not shown that failure to call Dr. John Bruhn to testify was prejudicial" and "Petitioner offers nothing other than his own conclusory allegations that Dr. Bruhn would have so testified." (Doc. 14 at 28.) Petitioner acknowledges that he did not even know if Dr. Bruhn would testify, but that his trial counsel was "too lazy to drive over to Gold's Gym" to interview him. (Doc. 12 at 21–22.) The R & R cites several cases to show that "[u]nsupported conclusory allegations are insufficient to demonstrate prejudice under *Strickland*." (Doc. 14 at 28.) These cases correctly point out the weakness in Petitioner's argument and objections to this claim. As the R & R concludes, "Petitioner's failure to make the requisite showing of 'prejudice' renders it unnecessary for the Court to address the 'deficient performance' issue." (*Id.* (*citing Strickland*, 466 U.S. at 697).) Accordingly, Petitioner does not establish IAC for failing to call Dr. Bruhn.

### v.    IAC Claim Five

Petitioner's fifth claim alleges that trial counsel was ineffective for failing to investigate at Gold's Gym, Petitioner's former employer, "to uncover potential witnesses and evidence supporting" his case. (Doc. 1-1 at 8.) Petitioner objected to the R & R's recommendation that this claim fails because his counsel did not "seek out and talk to individuals at the petitioner's place of employment – something a professional, responsible, competence and ethical defense attorney would have done." (Doc. 15 at 13.) Further, Petitioner adds that trial counsel "did nothing" and "should have interviewed co-workers and clients of the Petitioner on the chance that someone would have had something important to say or add to the defense." (*Id.* at 14.) These claims are speculative and fail to identify how certain unknown witnesses would provide helpful information to Petitioner's case. The vagueness shows the lack of prejudice needed to succeed under *Strickland*. The Court agrees with the R & R that "Petitioner does not support his speculative conclusion that there were any witnesses at the gym who would

have assisted in his defense or what their testimony would have been." (Doc. 14 at 29.)
Petitioner's claim fails on the merits and is not entitled to relief under *Strickland*.

### vi.     IAC Claim Six

In Petitioner's sixth IAC claim, the R & R summarizes that:

> Petitioner argues his defense counsel was ineffective for failing to introduce evidence that calls made to Ms. Laiadee's cell phone might support a conclusion that Petitioner did not possess her cell phone and that the phone could have been located at either of Ms. Laiadee's two prior places of employment as easily as at Petitioner's condominium, because all three locations were serviced by the same cell phone tower. (Doc. 1-1 at 8.) Petitioner also contends that his defense counsel should have introduced Petitioner's cell phone records indicating that he received calls from Denver, Colorado while he was in jail. (*Id.* at 8–9.) He suggests these unidentified calls could have come from Ms. Laiadee and would support his argument that she was still alive and may have moved to Denver. (*Id.* at 9.)

(Doc. 14 at 29.) Petitioner "strongly objects" to the R & R on this claim for the same reasons he raised in his Petition. (Doc. 15 at 15.) "The Petitioner complains again" about his trial counsel's inaction to pursue the alleged calls he received from a Denver area code. (*Id.*) He also states that this failure fell below the objective standard required and prejudiced his case. (*Id.* at 15–16.)

Petitioner's objections ignore the fact that Ms. Laiadee's cell phone was recovered at Petitioner's condominium on May 29, 2010. (Doc. 11-4 at 197, 208, 225.) As the R & R notes, "Petitioner fails to support a claim that his counsel was ineffective for not introducing evidence or making an argument that Ms. Laiadee's cell phone could have been somewhere other than his condominium, where the police located it." (Doc. 14 at 30.) Not only is Petitioner's contention that Ms. Laiadee called him from Denver speculative, as the R & R notes, there was an "obvious risk to Petitioner's defense in introducing evidence of these calls from unidentified callers in Colorado" that might not have come from Ms. Laiadee. (*Id.*) There is no evidence, other than Petitioner's self-serving statements, that these phone calls were from Ms. Laiadee. These speculations fail

1   to show how his trial counsel's representation fell below an objective standard of

2   reasonableness or that a reasonable probability exists that but for these alleged errors

3   Petitioner's trial would have had a different outcome. *Strickland*, 466 U.S. at 690, 693–

4   94.

5               **vii.    IAC Claim Seven**

6           Petitioner's seventh claim argues that his counsel was ineffective for advising him

7   to testify at trial. (Doc. 1-1 at 9.) Trial counsel also failed to "properly prepare" Petitioner

8   and, as a result, Petitioner was "confused in regard to certain questions." (*Id.*) Petitioner

9   objected to the R & R's contention that there was "persuasive evidence against the

10  Petitioner" and listed several reasons why the evidence against him was false or

11  insufficient. (Doc. 15 at 16.)

12          Petitioner's claims that he should not have been called to testify and he was

13  unprepared are both conclusory and speculative. As the R & R notes, "[t]he record

14  transcripts of Petitioner's testimony on direct examination (Doc. 11-7 at 238–302, Doc.

15  11-8 at 8–42), on cross-examination (Doc. 11-8 at 42–160, 190–93), and on redirect

16  (Doc. 11-8 at 160–83, 186–87) do not suggest that Petitioner's preparation generally was

17  lacking." (Doc. 14 at 32.) Petitioner has not provided more information about why he

18  should not have testified or how he was unprepared. The only evidence Petitioner

19  provides, other than his own statements, refers to a news report after his trial ended.

20  (Doc. 1 at 278.) This reported that a juror stated that what "most hurt" Petitioner was his

21  attitude presented as "indifference or arrogance." (*Id.*) No evidence suggests that trial

22  counsel inadequately prepared him or counseled Petitioner to act in this way. Given the

23  evidence against him, the Court agrees with the R & R that it would not have been IAC

24  "to advise Petitioner that his testimony was necessary for a reasonable hope that he would

25  be acquitted." (Doc. 14 at 31.)

26          Petitioner does not establish either that his defense counsel was ineffective for

27  suggesting that Petitioner testify or inadequately preparing him. *Strickland*, 466 U.S. at

28  687. The Court accepts and adopts the R & R's recommendation that "Petitioner's IAC

claims fail on the merits because he has failed to establish both that defense counsel's performance fell below an objective standard of reasonableness and a reasonable probability that but for counsel's alleged errors, the result of his trial would have been different." (Doc. 14 at 32.)

## C.   Ground Five

Petitioner's Ground Five claim argues that he is innocent based on "new evidence." (Doc. 1 at 10.) The R & R summarizes Petitioner's three instances of "new evidence":

> First, Petitioner states that Chandler Police Detective Moffat told a television reporter with the CBS program "48 Hours" that in Petitioner's case "there was no crime scene, so we created a virtual crime scene." (Doc. 1-1 at 12.) Petitioner also claims that State's witness Karlynne Martin told "48 Hours" staff that she had "misled jurors by presenting herself as [Ms. Laiadee's] best friend, when in fact, she was" Ms. Laiadee's former supervisor, and that Ms. Laiadee despised Ms. Martin because Martin had dismissed Laiadee without cause. (*Id.*) Petitioner asserts he learned of the "48 Hours" claims from information provided to him "by Judy Rybak, the producer of the '48 Hours' segment." (*Id.*) Petitioner further declares that witness J.R. had been released from custody after serving only 10 months of his "amended 18-month plea deal and [after serving] only 27% of his original plea deal of 2.5 years." (*Id.*) Petitioner states that the jury was never informed of these three pieces of "new evidence." (*Id.*)

(Doc. 14 at 33.)

Neither the Ninth Circuit nor the Supreme Court has resolved whether a freestanding actual innocence claim is legally cognizable.[4] *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013); *Herrera v. Collins*, 506 U.S. 390, 400 (1993); *Jones v. Taylor*, 763 F.3d 1242, 1246 (9th Cir. 2014). Even if there is such a right, as some courts have assumed, "the threshold for a freestanding claim of innocence would have to be 'extraordinarily high'" and "contemplates a stronger showing than insufficiency of the

---

[4] An actual innocence claim arises when a habeas petitioner argues that new evidence or other circumstances prove that they are innocent. *See generally Bisbee v. Ryan*, No. CV-12-00682-PHX-ROS, 2018 WL 740927, at *3 (D. Ariz. Feb. 6, 2018).

evidence to convict." *Carriger v. Stewart*, 132 F.3d 463, 476 (9th Cir. 1997) (quoting *Herrera*, 506 U.S. at 417). The Ninth Circuit has held that "at a minimum, the petitioner must go beyond demonstrating doubt about his guilt, and must affirmatively prove that he is probably innocent." *Jones*, 763 F.3d at 1246 (quotations omitted). "Evidence that merely undercuts trial testimony or casts doubt on the petitioner's guilt, but does not affirmatively prove innocence, is insufficient to merit relief on a freestanding claim of actual innocence." *Id.* at 1251.

The R & R correctly concludes that "Petitioner's asserted new evidence, considered separately or together, is either not new evidence at all or does not fall within the narrow circumstances recognized by the Ninth Circuit" and "fails to meet the 'extraordinarily high threshold' assumed by the Supreme Court" in *Herrera*. (Doc. 14 at 36–37.) Petitioner objects to several points raised in the R & R. (Doc. 15 at 17–19.) Although Petitioner raises the same arguments in his objections as mentioned above, he also objects to false testimony, "prosecutorial misconduct," deliberate fabrications in the R & R, and other conclusory allegations. (*Id.*) Petitioner's objections, as well as his Petition, do not provide a basis for relief.

As to the alleged information from the producer of "48 Hours," this is double hearsay. Petitioner does not provide support to show this information is reliable and only provides a speculative story. Although a court assessing a claim of actual innocence is "not bound by the rules of admissibility that would govern at trial," a court must consider "all of the evidence" with "due regard" to the reliability of the evidence. *Schlup*, 513 U.S. at 327–28. Petitioner has not provided enough information in the record to establish that Ms. Martin indeed confessed that she was faking her testimony. As the R & R notes, even if Ms. Martin was not Ms. Laiadee's "best friend," that fact would not affirmatively prove Petitioner's innocence. (*See* Doc. 14 at 35–36.) Moreover, Detective Moffat's statement in a "48 Hours" episode that he "created a virtual crime scene" goes against the record. As the R & R mentions, "[i]n the State's closing argument, the prosecutor tacitly admitted that there was no crime scene evidence in Petitioner's prosecution." (Doc. 11-8

at 239.) The State did not argue at trial that there was a "virtual crime scene." In fact, the prosecutor consistently admitted that there was no physical evidence. (*See id.* at 294–95.) Petitioner fails elaborate on what a "virtual crime scene" consists of, how it was used, or how it prejudiced his case.

As to Petitioner's claim that the jury never learned of J.R.'s "deal," this is contradicted by the record. As the R & R lays out, J.R. testified that after he provided information in Petitioner's case, his plea agreement was amended to reduce an already existing prison sentence by one year but increased his term of probation by one year. (Doc. 11-5 at 24–26, 29–30.) When J.R. testified at Petitioner's trial, he had already served his prison sentence and was on probation. (*Id.* at 28.) This evidence, if it even applies on an actual innocence claim, was in front of the jury. J.R. even agreed in the jury's presence that he gained a benefit by providing information about Petitioner. (*Id.* at 69.) The record cuts against Petitioner's objections to this claim and does not provide the evidence needed to "affirmatively prove innocence." *Jones*, 763 F.3d at 1251.

Accordingly, the Court accepts and adopts the R & R's recommendation that Petitioner's Ground Five fails to prove an actual innocence claim.

### D.   Ground Six

Petitioner's final ground raises an issue of "obstruction of the Petitioner's constitutionally protected right to represent himself and participate in the appeals process." (Doc. 1 at 11.) The R & R summarizes his Petition's arguments in detail:

> Petitioner's Ground Six claim is that his "constitutionally protected right to represent himself and participate in the appeals process was obstructed when, between October 12 and November 27, 2012, he was detained in a "psych ward" without any of his property, including his legal materials. (Doc. 1-1 at 14.) Petitioner says this situation occurred during his direct appeal process and that he was not permitted to communicate with his family or legal counsel. (*Id.*) Further, Petitioner states that in July and August 2014, he requested from prison officials copies of the standard Rule 32 Post-Conviction Relief petition forms and that at first his request was ignored and later the paralegal sent him the wrong forms. (*Id.*) He contends the paralegal also sent him the wrong

1
2
3
4
5
6
7
8
9

> instructions on how to fill out the forms. (*Id.* at 15.) Petitioner
> further complains that on January 20, 2015, he was moved to
> an isolation cell without any of his property "for no reason
> whatsoever." (*Id.*) He states that until early May 2015 his
> legal materials were kept from him and he then discovered
> that half of his legal paperwork was missing and the
> remaining half was mixed up with the paperwork of several
> other inmates. (*Id.*) Petitioner asserts that the "obstructionist
> and disruptive behavior" of the Arizona Department of
> Corrections is "a clear violation of the Petitioner's
> constitutional rights under the Fifth Amendment" and caused
> the Arizona Court of Appeals and Arizona Supreme Court to
> deny his motions for review. (*Id.* at 16–17.)

10
11
12
13
14
15

(Doc. 14 at 37.) In Petitioner's Objection, he raises almost the same arguments as outlined above. (Doc. 15 at 19–23.) Petitioner states that the R & R "does not even reference ADOC officials at the Santa Rita yard on the Tucson complex, who seized his 'Motion for Review' before the Arizona Court of Appeal" removed certain evidence linking two inmates. (*Id.* at 23.) Other objections raise issue with the prosecutor's past misconduct and Supreme Court precedent. (*Id.* at 22–23.)

16
17
18
19
20
21
22
23
24
25
26
27
28

Petitioner's first argument, that he was unable to meaningfully represent himself and participate in the appeals process while in a "psych ward," is not persuasive. As the R & R notes, Petitioner raised this argument in his July 2015 PCR petition, (Doc. 11-9 at 60), which the superior court rejected. (*Id.* 31, 64.) Petitioner was also represented by appointed counsel on direct appeal who filed a brief on October 11, 2012, which was one day before Petitioner was allegedly placed in the "psych ward." (Doc. 1 at 77.) Even if Petitioner was separated from his legal materials from October 12, 2012 through November 27, 2012, this separation did not impact his right to access the court. If Petitioner argues that his constitutional rights were violated because he did not represent himself, Petitioner has provided nothing in the record that suggested he desired to do so. The R & R correctly notes that "Petitioner was represented throughout his direct appeal process and had no constitutional right to a hybrid representation. *United States v. Olano*, 62 F.3d 1180, 1193 (9th Cir. 1995)." (Doc. 14 at 38.)

Petitioner also objected to the R & R's conclusion that his right to access claim was not viable. The right of meaningful access to the courts prohibits officials from actively interfering with inmates' attempts to prepare or file legal documents. *Lewis v. Casey*, 518 U.S. 343, 350 (1996). The right of access to the courts is only a right to bring petitions or complaints to federal court and not a right to discover such claims or even to ligate them effectively once filed with a court. *Id.* at 354. The right "guarantees no particular methodology but rather the conferral of a capability–the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." *Id.* at 356. As a matter of standing, for an access-to-courts claim, a plaintiff must show that he suffered an "actual injury" with respect to contemplated litigation. *Id.* at 349. To show actual injury with respect to contemplated litigation, the plaintiff must demonstrate that the defendants' conduct frustrated or impeded him from bringing to court a nonfrivolous claim that he wished to present. *Id.* at 352–53.

"[T]he injury requirement is not satisfied by just any type of frustrated legal claim." *Id.* at 354. The right of access to the courts "does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims." *Id.* at 355. The nonfrivolous claim must be a direct or collateral attack on the inmate's sentence or a challenge to the conditions of his confinement. *Id.* "Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id.* (emphasis in original).

The Court agrees with the R & R that "Petitioner does not establish that the actions of prison officials unconstitutionally interfered with his right to access to the courts." (Doc. 14 at 39.) Petitioner's allegations are far too vague and conclusory to state an access-to-the-courts claim. Petitioner also fails to allege facts to support that he suffered an actual injury that is required under the *Lewis* framework. Petitioner's other objections state similar conclusory grounds dismissed above.

Petitioner's Ground Six claim fails on the merits. The Court accepts and adopts the

R & R's recommendation that Ground Six fails.

**IV.     CONCLUSION**

For the foregoing reasons, the Court accepts and adopts the R & R's recommendation that Grounds One through Three are procedurally defaulted without excuse and Grounds Four through Six fail on the merits. The R & R also recommends that a certificate of appealability be denied.

Before Petitioner can appeal this Court's judgment, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b)(1). The district court that rendered a judgment denying the petition made pursuant to 28 U.S.C. § 2254 must either issue a certificate of appealability or state why a certificate should not issue. *See id.* Additionally, 28 U.S.C. § 2253(c)(2) provides that a certificate may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." In the certificate, the court must indicate which specific issues satisfy this showing. *See* 28 U.S.C. § 2253(c)(3). A substantial showing is made when the resolution of an issue of appeal is debatable among reasonable jurists, if courts could resolve the issues differently, or if the issue deserves further proceedings. *See Slack v. McDaniel*, 529 U.S. 473, 484–85 (2000). Upon review of the record considering the standards for granting a certificate of appealability, the Court finds that a certificate shall not issue as the resolution of the Petition is not debatable among reasonable jurists.

Accordingly,

**IT IS ORDERED adopting** the Report and Recommendation. (Doc. 14.)

**IT IS FURTHER ORDERED denying** the Petition (Doc. 1) and **dismissing** it with prejudice.

**IT IS FURTHER ORDERED** declining to issue a certificate of appealability.

**IT IS FURTHER ORDERED denying as moot** Petitioner's Motion for Status (Doc. 17).

///

///

1   **IT IS FINALLY ORDERED** directing the Clerk of Court to enter judgment,

2   terminating this case.

3   Dated this 30th day of October, 2020.

Michael T. Liburdi
United States District Judge